**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x

In re Application of

ABRAAJ INVESTMENT MANAGEMENT
LIMITED,

For An Order To Obtain Discovery For Use
In Foreign Proceedings Pursuant To
28 U.S.C. § 1782

------------------------------------------------------------------------x

Case No. 20-_____

## MEMORANDUM OF LAW IN SUPPORT OF *EX PARTE* APPLICATION OF JOINT OFFICIAL LIQUIDATORS OF ABRAAJ INVESTMENT MANAGEMENT LIMITED FOR AN ORDER TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782

KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP
John E. Jureller, Jr.
Lauren C. Kiss
200 West 41st Street, 17th Floor
New York, New York 10036
Tel: (212) 972-3000
Fax: (212) 972-2245
jjureller@klestadt.com
lkiss@klestadt.com

*Attorneys for David Soden and Stuart Sybersma, the Joint Official Liquidators of ABRAAJ Investment Management Limited (In Official Liquidation)*

## TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT .................................................................................1

II.    BACKGROUND FACTS .....................................................................................4

    A. The Parties ........................................................................................................4

    B. United States Proceedings against AMN and AIML............................................5

    C. The Cayman Islands Proceeding .........................................................................6

    D. Alleged Misappropriation, Fraudulent Transfers and Improper Payments .........7

    E. Contemplated Cayman Litigation .......................................................................8

III.   REQUESTED DISCOVERY ...............................................................................9

IV.   ARGUMENT.......................................................................................................10

    A. Legal Standard of Section 1782.........................................................................10

    B. The Application Meets the Statutory Requirements of Section 1782 ...............12

        1.  The Correspondent Banks "Reside" or are "Found" in the Southern District.......12

        2.  The Discovery Sought is "For Use" in a Foreign Proceeding ...............................16

            (a) The Cayman Court is a Foreign Tribunal and the Contemplated Cayman Litigation is a Foreign Proceeding............................................................17

            (b) The Requested Discovery is "For Use" in a Foreign Proceeding .............19

        3.  The JOLs are "Interested Persons" .........................................................................19

    C. The Discretionary Factors of Section 1782 Weigh in Favor of the JOLs' Application ....20

        1.  The First Discretionary Factor..............................................................................20

        2.  The Second Discretionary Factor .........................................................................20

        3.  The Third Discretionary Factor ............................................................................21

        4.  The Fourth Discretionary Factor...........................................................................23

V.    CONCLUSION.................................................................................................25

# TABLE OF AUTHORITIES

*Cases:*

*Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.,*
    785 F. Supp. 2d 434 (S.D.N.Y. 2011) ........................................................................17

*Application of Malev Hungarian Airlines,* 964 F.2d 97 (2d Cir. 1992) ........................................23

*Ayyash v. Crowe Horwath LLP,*
    No. 17-MC-482 (AJN), 2018 WL 1871087 (S.D.N.Y. Apr. 17, 2018) ...................13

*Brandi-Dohrn v. IKB Deutsche Industriebank AG,*
    673 F.3d 76 (2d Cir. 2012) ............................................................10, 11, 12, 19, 22

*Bravo Express Corp. v. Total Petrochemicals & Ref. U.S.,*
    613 F. App'x 319 (5th Cir. 2015) ............................................................................18

*Euromepa S.A. v. R. Esmerian, Inc.,* 51 F.3d 1095 (2d Cir. 1995) .........................................11, 20

*Gushlak v. Gushlak,* 486 F. App'x 215 (2d Cir. 2012)............................................................10, 17

*Hertz Corp. v. Friend,* 559 U.S. 77 (2010) .................................................................................13

*In re Accent Delight Int'l Ltd.,* 869 F. 3d 121 (2d Cir. 2017) ........................................................19

*In re Application of Dreymoor Fertilizers Overseas Pte Ltd.,*
    20-MC-192, Order [Docket No. 7] (S.D.N.Y. May 18, 2020) ................................9, 11, 16, 24

*In re Application of Mesa Power Group,* LLC, 878 F. Supp. 2d 1296 (S.D. Fla. 2012) .............20

*In re Application of Nicholas T.C. Hill,*
    No. M19-117, 2005 WL 1330769 (S.D.N.Y. June 3, 2005) ............................................15, 16

*In re Aso,* No. 19-MC-190 (JGK)(JLC) 2019 WL 3244151 (S.D.N.Y. July 19, 2019) ...............14

*In re Bank of Cyprus Pub. Co.,* No. 10 Misc. 23, 2011 WL 223168 (S.D.N.Y. Jan. 21 2011).....12

*In re Bayer AG,* 146 F.3d 188 (3d Cir. 1998) ...............................................................................21

*In re Bracha Found.,* 663 F. App'x 755 (11th. Cir. 2016) ...........................................................17

*In re Del Valle Ruiz,* 939 F.3d 520 (2d Cir. 2019) .................................................................11, 12

*In re Edelman*, 295 F.3d 171 (2d Cir. 2002) ...........................................................................11, 12

*In re Ex Parte Application of Kleimar N.V.*, 220 F. Supp 3d 517 (S.D.N.Y. 2016) .....................14

*In re Fernando Celso De Aquino Chad,*
  19MC261, 2019 WL 2502060 (S.D.N.Y. June 17, 2019) .......................................................14

*In re Furstenberg Fin. SAS,*
  No. 18-MC-44 (JGK), 2018 WL 3392882 (S.D.N.Y. July 12, 2018) ..............................14, 17

*In re Hornbeam Corp.*, 722 F. App'x 7, 9-10 (2d Cir. 2018)...........................................................17

*In re Hornbeam Corp.,*
  No. 14 Misc. 424, 2014 WL 8775453 (S.D.N.Y. Dec. 24, 2014) ....................................14, 15

*In re IJK Palm LLC,*
  No. 3:16MC171(RNC), 2019 WL 2191171 (D. Conn. Jan. 30, 2019) ................16, 17, 20, 21

*In re Iraq Telecom Ltd.,*
  No. 18-MC-458 (LGS)(OTW), 2019 WL 3798059 (S.D.N.Y. Aug 13, 2019)
  *reconsideration denied,* No. 18-MC-458 (LGS)(OTW), 2019 WL 5080007 (S.D.N.Y. Oct.
  10, 2019) ......................................................................................................................15, 23, 24

*In re Kiobel*, 16 Civ. 7992, 2017 WL 354183 (S.D.N.Y. Jan. 24, 2017) ......................................18

*In re Mangouras,* No. 17-MC-172, 2017 WL 4990655 (S.D.N.Y. Oct 30, 2017) .......................17

*In the Matter of Lancaster Factoring Co.*, 90 F.3d 38 (2d Cir. 1996) .........................................17

*In re Metallgesellschaft AG,* 121 F.3d 77 (2d Cir. 1997) ........................................................11, 22

*In re OOO Promnefstroy,* No. M19-99(RJS), 2009 WL 3335608 (S.D.N.Y. Oct. 15, 2009) ......20

*In re Penner*, No. 17-CV-12136-IT, 2017 WL 5632658 (D. Mass. Nov. 22, 2017) ....................21

*In re Platinum Partners Value Arbitrage Fund L.P.,* 583 B.R. 803 (Bankr. S.D.N.Y. 2018) .....21

*In re Sargeant,* 278 F. Supp. 3d 814 (S.D.N.Y. 2017) ...................................................................13

*In re Veigam,* 746 F. Supp 2d 8 (D.D.C. 2010) ......................................................................21, 22

*Intel Corp. v. Advanced Micro Devices, Inc.,* 542 U.S. 241 (2004) ...10, 11, 12, 17, 19, 20, 22, 23

*Lyxor Asset Management S.A. v. Phoenix Meridian Equity Limited*
  2009 CILR 553 (Sep. 24, 2009).................................................................................................21

*Mees v. Buiter*, 793 F.3d 291 (2d Cir. 2015) ...............................................................................17

*Minatec Fin. S.a.r.l. v. SI Gro. Inc.,*
   No. 1:08-cv-269, 2008 WL 3884374 (N.D.N.Y. Aug. 18, 2008) ...........................................21

*Sandra Holding Ltd. v. Al Saleh*,
   No. 18-MC-91406-PBS, 2019 WL 3072197 (D. Mass. July 15, 2019) ................................21

**Other Authorities:**

28 U.S.C. § 1782...............................................................................................................passim

Federal Rule of Civil Procedure 26 ..................................................................................................23

Federal Rule of Civil Procedure 26(b)(2)(C)(i)..............................................................................23

Federal Rule of Civil Procedure 26(c)..............................................................................................23

Petitioners David Soden of Deloitte LLP and Stuart Sybersma of Deloitte & Touche, acting as the Joint Official Liquidators ("JOLs" or "Petitioners") of ABRAAJ Investment Management Limited (In Official Liquidation) ("AIML"), by their attorneys, respectfully submit this memorandum of law in support of their *ex parte* application ("Application") to take discovery in aid of a foreign proceeding pursuant to 28 U.S.C. § 1782 ("Section 1782"). In support of the Application, the JOLs submit the Declaration of Stuart Sybersma ("Sybersma Declaration"), dated June 9, 2020.

## I.    PRELIMINARY STATEMENT

The Application arises from certain claims that AIML has against, *inter alia*, Arif Masood Naqvi ("AMN"), the founder and former Chief Executive Officer of the Abraaj Group (defined later herein) and a former director of AIML, and Silverline Holdings Limited ("Silverline"), a Cayman Islands company controlled by AMN, related to certain fraudulent and/or improper transfers made by AIML to AMN and Silverline, as well as to certain other entities controlled by AMN or his family ("Other AMN Entities") and/or AMN's family ("AMN's Family"). Based upon the JOLs investigations, the net transfers total in excess of US$385 million. The discovery sought herein will support the contemplated litigation by the JOLs in the Cayman Islands ("Contemplated Cayman Litigation") pursuing the avoidance and return of the fraudulently transferred funds.

Based upon the JOLs investigation to date, AMN misappropriated in excess of US$385 million from AIML from 2009 to 2018. The Abraaj Group (defined below) is a group of private equity funds with Abraaj Holdings at the top of the structure. Many of the funds were managed by AIML as investment manager, whose sole shareholder is Abraaj Holdings ("AH"). AIML and AH are both Cayman Islands exempted companies which were ordered to be wound up by the

Grand Court of the Cayman Islands in 2018 ("Cayman Court").  The petitioners were appointed as Joint Official Liquidators of AIML by the Cayman Court.

AIML managed over 40 private equity funds, principally structured as Cayman Islands exempted limited partnerships, with more than 600 limited partner investors.  At its peak, AIML managed assets valued in excess of US$14 billion.

AIML suffered massive losses and is deeply insolvent.  AIML has liabilities in the aggregate amount of approximately US$1.28 billion.

At the direction of AMN, or otherwise procured by AMN, AIML paid approximately US$780 million to AMN and to other parties for his benefit through more than 3,700 transactions, with a *net* total amount misappropriated of approximately US$385 million.

The JOLs, in their capacities as such, seek to recover these misappropriated funds for the benefit of the substantial creditors and investors of AIML.

As a result of the misappropriation by AMN, the JOLs intend to assert certain claims against AMN and his entities, including Silverline, for avoidance and repayment of the improperly transferred funds including for breach of fiduciary duty, unjust enrichment and knowing receipt under Cayman Islands law.

Accordingly, the JOLs bring this Application seeking permission to subpoena documents and information for use in the Contemplated Cayman Litigation from eighteen (18) non-party banks and banking associations located in the Southern District of New York ("Southern District"): (1) Bank of America, N.A. ("Bank of America"); (2) The Bank of New York Mellon ("Bank of New York"); (3) Citibank, N.A. ("Citibank"); (4) Deutsche Bank AG, New York Branch ("Deutsche Bank USA"); (5) Deutsche Bank Trust Company Americas ("Deutsche Bank Trust"); (6) Goldman Sachs and Co. ("Goldman Sachs"); (7) HSBC Bank USA, N.A. ("HSBC"); (8) J.P.

Morgan Chase Bank, N.A. ("J.P. Morgan"); (9) Mashreqbank PSC, New York Branch ("Mashreqbank"); (10) Standard Chartered Bank US (a/k/a/ Standard Chartered Bank, New York Branch) ("Standard Chartered"); (11) Wells Fargo Bank N.A. ("Wells Fargo"); (12) Barclays Bank PLC, New York Branch ("Barclays"); (13) Société Generale North America ("Société Generale"); (14) BNP Paribas USA Inc. ("BNP"); (15) Bank of Nova Scotia ("BNS"); (16) UBS AG, New York Branch ("UBS"); (17) Commerzbank AG, New York Branch ("Commerzbank"); and (18) The Clearing House Payments Company LLC ("CHPC") (collectively, the "Correspondent Banks").

AIML's bank accounts show sums being transferred from AIML bank accounts to certain Transferees (defined later herein); the JOLs already have that information. In fact, a large number of specific transactions have been expressly identified by the JOLs, and form the basis of the claims against AMN and Silverline, among others. The focus of the Application is to discover what happened to the funds once received by the Transferees. Through their proposed subpoenas, the JOLs seek from the Correspondent Banks documents and information in relation to, *inter alia*, USD transactions and transfers made by the Transferees over the period from January 1, 2009 through June 18, 2018 (the "Requested Discovery"). The JOLs investigation to date indicates that the Correspondent Banks would have processed such USD transactions and transfers on behalf of or for the benefit of the Transferees.

As set forth below, the JOLs meet each of the statutory and discretionary factors considered by this Court in determining whether to grant relief under Section 1782.

## II.    BACKGROUND FACTS

### A.    The Parties:

The Abraaj Group of Companies ("Abraaj Group") is a group of private equity funds with AH at the top of the structure. *See* Sybersma Declaration, ¶ 8.

AIML was the investment manager for many of the funds of the Abraaj Group. AIML managed over 40 private equity funds, principally structured as Cayman Islands exempted limited partnerships, with more than 600 limited partner investors. At its peak, AIML managed assets valued in excess of US$14 billion. *Id.* at ¶ 9.

AMN is the founder and former Group Chief Executive Officer of the Abraaj Group. AMN was at all material times a director of AIML and AH. AMN is a citizen of Pakistan, but currently resides in London under house arrest. As set forth below, he is facing a pending application for his extradition to the United States. *Id.* at ¶ 10.

Silverline was incorporated in the Cayman Islands on April 6, 2010 as an exempted company and AMN was at all material times its sole shareholder. *Id.* at 11. Silverline's directors were (i) Rafique Lakhani, who was also managing director of AH, (ii) Alessandro Celano, who managed AMN's private affairs, and (iii) (from August 8, 2017) Asim Hameed, an employee of AIML subsidiary, ABRAAJ Capital Limited. *Id.* at ¶ 11.

The Transferees are principally AMN, Silverline, Other AMN Entities or AMN's Family. *Id.* at ¶12. The identities of the Transferees are set forth on **Schedule A** to the Sybersma Declaration. Based upon the books and records of AIML, each of the Transferees received certain transfers or payments of funds misappropriated by AMN or at his direction from AIML during the period from January 1, 2009 through June 18, 2018. *Id.* at ¶ 12.

4

## B. United States Proceedings against AMN and AIML

On April 11, 2019, the United States Securities and Exchange Commission (the "SEC") filed a civil complaint in the United States District Court for the Southern District of New York ("SDNY District Court"), Case No. 19-cv-3244, charging AIML and AMN with violations of provisions of the Investment Advisers Act of 1940. The SEC complaint concerns Abraaj Growth Markets Health Fund L.P., of which AIML was the investment manager. It alleges that AIML and AMN defrauded the fund and U.S. investors by misappropriating over US$230 million from at least September 2016 until at least June 2018. The SEC seeks a permanent injunction against AIML and AMN, *inter alia*, prohibiting additional violations of the Investment Advisers Act, disgorgement of alleged ill-gotten gains with interest, and a civil monetary penalty. The SEC proceedings have been stayed pending the outcome of the criminal proceedings commenced by the DOJ (defined below), as discussed below. *Id.* at ¶ 13.

On June 12, 2019, the United States Department of Justice (the "DOJ") filed a 16-count indictment naming AMN and other individuals as defendants.[1]  AIML is not a defendant to these proceedings. The indictment, which supersedes two indictments unsealed earlier in 2019[2], alleges that between 2014 and 2018 the defendants engaged in a racketeering enterprise, and conspired to and committed securities and wire fraud by depriving investors of accurate information about material aspects of the Abraaj Group's financial health and misappropriating investor funds for illicit purposes. The DOJ further alleges that, during that same period, certain defendants engaged in money laundering, a conspiracy to defraud the United States by providing false information to a United States agency, theft of public funds, and theft of employee pension plan funds. The

---

[1] Mustafa Abdel-Wadood, Sivendran Vettivetpillai, Waqar Siddique, Rafique Lakhani, and Ashish Dave.
[2] On April 11, 2019, the DOJ unsealed criminal indictments filed in the SDNY District Court that named AMN and Mustafa Abdel-Wadood as defendants (19-cv-233). On April 16, 2019, the DOJ unsealed a criminal indictment filed in the SDNY District Court naming Sivendran Vettivetpillai as a defendant.

allegations primarily relate to three funds in the Abraaj Group for which AIML was investment manager (Abraaj Private Equity Fund IV L.P., the Infrastructure and Growth Capital Fund L.P., and Abraaj Growth Markets Health Fund L.P.). With one exception, the defendants, including AMN, have not yet entered pleas. On June 28, 2019, in the SDNY District Court, Mustafa Abdel-Wadood (a managing director of the Abraaj Group) pleaded guilty to the indictment, including to racketeering and securities and wire fraud. In his allocution, he stated that he took various steps "*at the direction of Arif Naqvi*" and referred to capitulating to "*Arif Naqvi's misconduct*". *Id.* at ¶ 14.

In April 2019, AMN was arrested at Heathrow Airport after the DOJ requested his arrest and extradition. AMN is resisting extradition. On May 2, 2019, AMN was granted bail on conditions including the payment of £15 million into court as security. Having made this payment, AMN was released on bail on May 28, 2019. AMN is subject to house arrest at his London property, and subject to requirements that he wears an electronic tag and surrenders his travel documents. It is the JOLs understanding that the extradition hearing has been scheduled for June 22-25, 2020 and July 1, 2020. *Id.* at ¶ 15.

## C. The Cayman Islands Proceeding

The requested relief is for purposes of discovery in the Contemplated Cayman Litigation and in connection with a winding up (liquidation) proceeding entitled *In the Matter of the Companies Law (2018 Revision) and in the Matter of ABRAAJ Investment Management Limited,* Cause No. FSD 111 of 2018 (RMJ) (the "Winding Up Proceeding"), commenced in the Grand Court of the Cayman Islands, Financial Division ("Cayman Court") on June 15, 2018. *Id.* at ¶ 16.

On June 18, 2018, the Cayman Court appointed David Soden of Deloitte LLP and Stuart Sybersma of Deloitte & Touche as Joint Provisional Liquidators of AIML (the "Winding Up

Order"). *Id.* at ¶ 17. A copy of the Winding Up Order is attached as **Exhibit B** to the Sybersma Declaration. Shortly thereafter, the JOLs were appointed as the Joint Official Liquidators.

Pursuant to the Winding Up Order, the JOLs were specifically authorized to exercise the following powers without further sanction from the Cayman Court: "(a) bring or defend any action or other legal proceeding in any jurisdiction in the name and on behalf of [AIML] . . ." *See* Sybersma Declaration, Exhibit B, ¶ 4(a).

### D. Alleged Misappropriation, Fraudulent Transfers and Improper Payments

The JOLs forensic investigations have identified a significant number of transactions (over 3,700) which took place from 2009 to 2018 between AIML and AMN (and related entities), or which otherwise appear to be for AMN's benefit (collectively, the "AMN Payments"). The AMN Payments comprise both debits from and credits to AIML, with a gross value of approximately US$1.2 billion and a *net* value of more than US$385 million. *Id.* at ¶ 19. The following table breaks down the AMN Payments by financial year:

| Financial Year[3] | Credit (US$) (Paid by or on behalf of AMN) | Debit (US$) (Paid by AIML) | Net payment/ (receipt) by AIML (US$) |
|---|---|---|---|
| 2009 | 84,855,375 | 118,120,950 | 33,265,576 |
| 2010 | 61,694,037 | 91,704,370 | 30,010,334 |
| 2011 | 156,503,509 | 149,428,552 | (7,074,957) |
| 2013 | 45,403,712 | 110,897,132 | 65,493,421 |
| 2014 | 3,928,219 | 60,823,608 | 56,895,389 |
| 2015 | 17,966,214 | 105,452,634 | 87,486,420 |
| 2016 | 1,667,865 | 62,700,537 | 61,032,672 |

---

[3] AIML's 2009 to 2011 financial years were from January 1 to December 31, respectively; its 2013 financial year was from January 1, 2012 to June 30, 2013; and its 2014 to 2018 financial years were from July 1 to June 30, respectively.

| 2017 | 15,585,649 | 49,157,359 | 33,571,710 |
| 2018 | 7,199,605 | 32,301,507 | 25,101,902 |
| **Total** | **394,804,183** | **780,586,649** | **385,782,466** |

*See* Sybersma Declaration, ¶ 19. These transactions took place between AIML and the following persons or entities: (i) AMN; (ii) Silverline; (iii) Other AMN Entities; (iv) AMN's Family; and (v) other related persons/entities. *Id.* at ¶ 20.

According to the JOLs' investigation, these transactions were recorded in AIML's accounting records as payments made to AMN or for his benefit. *Id.* at ¶ 21. The majority by value of the transactions have been traced to actual cash transfers shown on bank statements.

The following table shows the split between the counterparties to the AMN Payments.

| Payee | Credit (US$) (Paid by or on behalf of AMN) | Debit (US$) (Paid by AIML) | Net payment/ (receipt) by AIML (US$) |
|---|---|---|---|
| AMN | 32,922,032 | 167,266,979 | 134,344,948 |
| Silverline | 73,163,489 | 272,667,308 | 199,503,820 |
| Other AMN Entities | 99,183,602 | 203,566,234 | 104,382,632 |
| AMN's Family | 0 | 1,153,829 | 1,153,829 |
| Others | 189,535,061 | 135,932,298 | (53,602,763) |
| **Total** | **394,804,183** | **780,586,649** | **385,782,466** |

*See* Sybersma Declaration, ¶ 22.

### E. Contemplated Cayman Litigation

Based upon their investigations to date, the JOLs, in their capacities as the liquidators of AIML, intend to pursue litigation in the Cayman Islands with respect to the AMN Payments. Specifically, through the Contemplated Cayman Litigation, the JOLs intend to bring claims

against, among others, AMN and Silverline, as well as the Other AMN Entities and AMN's Family, asserting causes of action against such transferees of the misappropriated funds for, *inter alia*, breach of fiduciary duty, unjust enrichment and knowing receipt under Cayman Islands law or other applicable laws. *Id.* at ¶ 23.

## III.  REQUESTED DISCOVERY

AIML's bank accounts show sums being transferred from AIML bank accounts to the Transferees. *Id.* at ¶ 27. In fact, a large number of specific transactions have been expressly identified by the JOLs, and form the basis of the claims against AIML and Silverline, among others. The focus of the Application is to discover what happened to the funds once received by the Transferees. *Id.* at ¶ 27.

Through this Application, the JOLs seek the Requested Discovery – documents and information in the possession or control of the Correspondent Banks in relation to, *inter alia*, USD transactions and transfers made *by* the Transferees over the period from January 1, 2009 through June 18, 2018. The JOLs investigation to date indicates that the Correspondent Banks would have processed such USD transactions and transfers for or on behalf of the Transferees.

Requests for transfer records from intermediary and correspondent banks are routine and rarely opposed by such banks. The Courts have granted such similar discovery in recent cases. *See, e.g., In re the Application of Dreymoor Fertilizers Overseas Pte Ltd.*, 20-MC-192, Order [Docket No. 7] (S.D.N.Y. May 18, 2020); *In re Hornbeam Corp.,* No. 14 Misc. 424, 2014 WL 8775453, at *5 (S.D.N.Y. Dec. 24, 2014).

Accordingly, the JOLs bring this Application seeking permission to subpoena documents and information for use in the Contemplated Cayman Litigation from eighteen non-party banks and banking associations located in the Southern District: (1) Bank of America; (2) Bank of New

York; (3) Citibank; (4) Deutsche Bank USA; (5) Deutsche Bank Trust; (6) Goldman Sachs; (7)

HSBC; (8) J.P. Morgan; (9) Mashreqbank; (10) Standard Chartered; (11) Wells Fargo; (12)

Barclays; (13) Société Generale; (14) BNP; (15) BNS; (16) UBS; (17) Commerzbank; and (18)

CHPC. Copies of the proposed subpoenas *duces tecum* are annexed to the Sybersma Declaration

as **Exhibits C through T**.

## IV. ARGUMENT

### A. Legal Standard of Section 1782

Section 1782 permits United States District Courts to grant discovery for use in a pending

or "reasonabl[y] contemplate[ed]" foreign proceeding. *Intel Corp. v. Advanced Micro Devices,*

*Inc.,* 542 U.S. 241, 259 (2004). The statute, in relevant part, states:

> The district court of the district in which a person resides or is found may order him
> to give his testimony or statement or to produce a document or other thing for use
> in a proceeding in a foreign or international tribunal, including criminal
> investigations conducted before formal accusation. [A] request [may be] made, by
> a foreign or international tribunal, or upon the application of any interested person
> . . . To the extent that the order does to prescribe otherwise, the testimony or
> statement shall be taken, and the document or other thing produced, in accordance
> with the Federal Rules of Civil Procedure.
>
> A person may not be compelled to give his testimony or statement or to produce a
> document or other thing in violation of any legally applicable privilege.

28 U.S.C. § 1782(a).

Thus, a district court may order a person or entity residing within its district to produce

documents for use in a foreign legal proceeding, unless it would violate a legal privilege. *See Intel*,

542 U.S. at 256-60 (2004).

The present application is properly made *ex parte.* "[I]t is neither uncommon nor improper

for district courts to grant application made pursuant to §1782 *ex parte*." *Gushlak v. Gushlak*, 486

Fed. Appx. 215, 217 (2d Cir. 2012); *see also Brandi-Dohrn v. IKB Deutsche Industriebank AG,*

673 F.3d 76, 78 (2d Cir. 2012); *In re Edelman*, 295 F.3d 171, 173-17 (2d Cir. 2002); *In re Hornbeam Corp.*, No. 14 Misc. 424, 2014 WL 8775453, at *5 (S.D.N.Y. Dec. 24, 2014); *In re the Application of Dreymoor Fertilizers Overseas Pte Ltd.*, 20-MC-192, Order [Docket No. 7] (S.D.N.Y. May 18, 2020).

An application made pursuant to Section 1782 must satisfy three statutory requirements: "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *Brandi-Dohrn,* 673 F.3d at 80.

Thereafter, courts may consider four discretionary factors in deciding whether to grant a Section 1782 application: (1) whether the documents or testimony sought are within the foreign tribunal's jurisdictional reach, and thus accessible absent Section 1728 aid; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal court judicial assistance; (3) whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the subpoenas contain unduly intrusive or burdensome requests. *See Intel,* 542 U.S. at 264-65; *see also In re Del Valle Ruiz*, 939 F. 3d 520, 533-534 (2d Cir. 2019).

Moreover, courts in this Circuit "evaluate discovery requests under section 1782 in light of the statute's twin aims of providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Euromepa S.A. v. R. Esmerian, Inc.,* 51 F.3d 1095, 1097 (2d Cir. 1995) (citations omitted); *see also In re Metallgesellschaft AG,* 121 F.3d 77, 79 (2d Cir. 1997).

11

Both the Supreme Court and the Second Circuit have acknowledged a Congressional intent to provide liberal avenue to discovery in aid of foreign and international proceedings. *See, e.g., Intel*, 542 U.S. at 247–48; *Brandi-Dohrn*, 673 F.3d at 80 ("[T]he statute has, over the years, been given increasingly broad applicability."); *In re Edelman*, 295 F.3d 171, 179-80 (2d Cir. 2002) ("In sum, Congress has expressed as its aim that the statute be interpreted broadly . . .").

## B.   The Application Meets the Statutory Requirements of Section 1782

The Application meets the three statutory requirements of Section 1782: (1) the Correspondent Banks "reside" or are "found" in the Southern District; (2) the requested information is for use in a foreign proceeding; and (3) the JOLs are interested parties as the Cayman Court-appointed joint official liquidators of AIML and the putative plaintiffs in the Contemplated Cayman Litigation.

### 1.   The Correspondent Banks "Reside" or are "Found" in the Southern District

This Court has jurisdiction to grant the instant Application for discovery from the Correspondent Banks because all "reside" or are "found" in this district. 29 U.S.C. § 1782. While section 1782 does not define "found", in determining Section 1782 jurisdiction, courts apply a "flexible reading of the phrase "reside or is found." *In re Edelman,* 295 F.3d 171, 178 (2d Cir. 2002). The Second Circuit has "repeatedly recognized Congress's intent that § 1782 be 'interpreted broadly' and held that the "statutory scope of 'found' extends to the limits of personal jurisdiction consistent with due process." *In re de Valle Ruiz*, 939 F.3d at 527-28 (internal citations omitted).

Each of the Correspondent Banks maintains their place of incorporation or principal place of business within the Southern District and/or engage in the sort of systematic and continuous

activities that courts consider sufficient for the purposes of Section 1782 to find that a corporation "resides" or can be "found" in a district.

A corporation "resides or is found" in a jurisdiction if it is "at home" there, such as when the jurisdiction is the corporation's place of incorporation or its principal place of business. *In re Sargeant,* 278 F. Supp. 3d 814, 820 (S.D.N.Y. 2017); *In re Bank of Cyprus Pub. Co.*, No. 10 Misc. 23, 2011 WL 223168, at \*2 (S.D.N.Y. Jan. 21 2011) (litigant obtained §1782 jurisdiction over a foreign-based law firm on the grounds that it "has an office in Manhattan and is therefore located in the Southern District of New York."); *Hertz Corp. v. Friend*, 559 U.S. 77, 81, 93 (2010) (holding that principal place of business "should normally be the place where the corporation maintains its headquarters"). Additionally, Courts in this district have held that an entity is "found" in this district if it has a "systematic and continuous" presence in the Southern District of New York. *See In re Ex Parte Application of Kleimar N.V.*, 220 F. Supp 3d 517, 521 (S.D.N.Y. 2016); *Ayyash v. Crowe Horwath LLP,* No. 17-MC-482 (AJN), 2018 WL 1871087, at \*2 (S.D.N.Y. Apr. 17, 2018).

- The Bank of New York is headquartered at and/or maintains a principal place of business in New York, NY at 240 Greenwich Street, New York, NY 10286[4];

- Citibank is headquartered and/or maintains a principal place of business in New York, New York at 388 Greenwich Street, New York, NY 10013[5];

- Deutsche Bank USA is headquartered and/or maintains a principal place of business in New York, New York at 60 Wall Street, New York, NY 10005[6];

---

[4]   *See* Fed. Deposit Ins. Corp., BankFind, The Bank of New York Mellon, available at https://research2.fdic.gov/bankfind/detail.html?bank=639&name=The%20Bank%20of%20New%20York%20Mello n&searchName=bank%20%20york&searchFdic=&city=&state=&zip=&address=&tabId=2.   Screenshots of the webpages or documents cited herein are available upon request to the undersigned counsel.
[5]   *See Sec.* Exch. Comm., Citigroup Filing Details, available at https://www.sec.gov/Archives/edgar/data/831001/000095010319017478/0000950103-19-017478-index.htm; and Citigroup Inc. Form 10-K 2019, https://www.sec.gov/ix?doc=/Archives/edgar/data/831001/000083100120000031/c-12312019x10k.htm
[6]   *See* Deutsche Bank USA, Contact, https://www.db.com/usa/content/en/Contact.html.

- Deutsche Bank Trust is headquartered and/or maintains a principal place of business in New York, New York at 60 Wall Street, New York, NY 10005[7];

- Goldman Sachs is headquartered and/or maintains a principal place of business in New York, New York at 200 West Street, New York, NY 10282[8];

- HSBC is headquartered and/or maintains a principal place of business in New York, New York at 452 Fifth Avenue, New York, NY 10018[9];

- J.P. Morgan is headquartered and/or maintains a principal place of business in New York, New York at 383 Madison Avenue, New York, NY 10179[10];

- Standard Chartered is headquartered and/or maintains a principal place of business in New York, New York at 1095 Avenue of the Americas, New York, NY 10036[11];

- Bank of America has engaged in systematic and continuous activities in the Southern District central to their businesses[12];

- Wells Fargo has engaged in systematic and continuous activities in the Southern District central to their businesses[13];

---

[7] *See* Fed. Deposit Ins. Corp., BankFind, Deutsche Bank Trust Company Americas, available at https://research2.fdic.gov/bankfind/detail.html?bank=623&name=Deutsche%20Bank%20Trust%20Company%20A mericas&searchName=Deutsche%20Bankress&searchFdic=&city=&state=&zip=&address=&tabId=2

[8] *See* Fed. Deposit Ins. Corp., BankFind, Goldman Sachs Bank USA, available at https://research2.fdic.gov/bankfind/detail.html?bank=33124&name=Goldman%20Sachs%20Bank%20USA& s&searchF dic=&city=&state=&z p=&address=&searchWithin=&activeFlag=&sear         e&tabid=2.

[9] *See* HSBC, HSBC USA Inc. Form 10-k 2019, https://www.sec.gov/Archives/edgar/data/83246/000008324620000005/husi12311910-k.htm

[10] *See* Sec. Exch. Comm., JPMorgan Chase & Co. Form 10-K 2019, https://www.sec.gov/ix?doc=/Archives/edgar/data/19617/000001961720000257/corp10k2019.htm

[11] *See* Standard Chartered US, Contact Us, https://www.sc.com/us/contact-us/

[12] Bank of America has several hundred locations in New York State. Fed. Deposit Ins. Corp., BankFind, Bank of America Nat'l Ass'n Locations, available at https://research2.fdic.gov/bankfind/detail.html?bank=3510&name=Bank%20of%20America%2C%20National%20 Association&searchName=bank%20of%20america&searchFdic=&city=&state=&zip=&address=&searchWithin=& activeFlag=&searchByTradename=false&tabId=2#. Further, Bank of America employees over 13,000 employees in New York State. Lananh Nguyen & Lily Katz, Bank of America Plans to Concentrate Manhattan Staff at Midtown Hub     Bloomberg,     https://www.bloomberg.com/news/articles/2019-06-12/bofa-unveils-plan-to-concentrate-manhattan-staff-at-midtown-hub

[13] Wells Fargo has full-service banks within New York State. Fed. Deposit Ins. Corp., BankFind, Wells Fargo Bank Nat'l          Ass'n          Locations,          available          at https://research2.fdic.gov/bankfind/detail.html?bank=3511&name=Wells%20Fargo%20Bank%2C%20National%20 Association&se rchNae=wells%20fargo&searchFdic=&city=&state=&zip=&address=&searchWithin=&activeFlag=&searchByTrad ename=false&tabld=2#. Moreover, its international branch, which is the institution associated with its SWIFT Code, is located at its New York location. https://www.wellsfargo.com/com/international/resources/routing-numbers. Moreover, Wells Fargo purchased a half million square feet of office space to serve as headquarters for its Corporate

14

- Mashreqbank is headquartered and/or maintains a principal place of business in New York, New York at 50 Broadway, Suite 1500, New York, NY 10004[14];

- Barclays is headquartered and/or maintains a principal place of business in New York, New York at 745 Seventh Avenue, New York, NY 10019[15];

- Société Generale maintains its North American headquarters and/or maintains a principal place of business in New York, New York at 245 Park Avenue, New York, NY 10167[16];

- BNP maintains its North American headquarters and/or maintains a principal place of business in New York, New York at 787 Seventh Avenue, 14th Floor, New York, NY 10019[17];

- BNS maintains its North American headquarters and/or maintains a principal place of business in New York, New York at 250 Vesey Street, New York, NY 10281[18];

- UBS maintains its North American headquarters and/or maintains a principal place of business in New York, New York at 1285 Avenue of the Americas, New York, NY 10019[19];

- Commerzbank maintains its North American headquarters and/or maintains a principal place of business in New York, New York at 225 Liberty Street, New York, NY 10281[20]; and

- CHPC maintains its headquarters and/or maintains a principal place of business in New York, New York at 450 West 33rd Street, #5, New York, NY 10001[21].

---

& Investment Banking business. Wells Fargo helps Hudson Yards 'expand the possible', https://stories.wf.com/wells-fargo-helps-hudson-yards-expand-possible/

[14] *See* Mashreq, International Banking, http://www.mashreqbank.com/qatar/en/international-banking/network/usa
[15] *See, e.g.,* https://www.fdic.gov/regulations/reform/resplans/plans/barclays-165-1807.pdf;
https://www.bloomberg.com/profile/company/7929Z:US
[16] *See* https://americas.societegenerale.com/en/locations/worldwide-details/office/societe-generale-branch-americas-securities-llc-locations/
[17] *See, e.g.,* https://usa.bnpparibas/en/bnp-paribas/bnp-paribas-us/;
https://www.bloomberg.com/profile/company/1473963D:US
[18] *See* https://www.scotiabank.com/global/en/country/united-states-of-america.html
[19] *See* https://sec.report/CIK/0001070765
[20] *See* https://www.worldwide.commerzbank.com/en/home/inhalte/niederlassungsseite_5537.jsp?type=outlet
[21] *See, e.g.,* https://www.theclearinghouse.org/; https://www.bloomberg.com/profile/company/0226331D:US

Further, courts have previously found that Bank of America, Citibank, Deutsche Bank USA, Deutsche Bank Trust, Goldman Sachs, HSBC, J.P. Morgan, Standard Chartered, Wells Fargo, Bank of America and Commerzbank maintain their respective places of business in the Southern District. *See In re the Application of Dreymoor Fertilizers Overseas Pte Ltd.*, 20-MC-192, Order [Docket No. 7] (S.D.N.Y. May 18, 2020) (holding that the Section 1782 residency requirement was met for HSBC, Bank of New York, Mellon, J.P. Morgan, Citibank, Deutsche Bank USA, Deutsche Bank Trust, Wells Fargo, Commerzbank and Bank of America); *In re Fernando Celso De Aquino Chad,* 19MC261, 2019 WL 2502060, at \*\*2-3 (S.D.N.Y. June 17, 2019) (same for Citibank, Bank of New York, HSBC and J.P. Morgan); *In re Hornbeam Corp.,* No. 14 Misc. 424, 2014 WL 8775453, at \*5 (S.D.N.Y. Dec. 24, 2014) (same for Bank of New York, Citibank, Deutsche Bank USA, HSBC, J.P. Morgan, and Standard Chartered); *In re Furstenberg Fin. SAS,* No. 18-MC-44 (JGK), 2018 WL 3392882, \*1 (S.D.N.Y. July 12, 2018) (same for Bank of New York, Citibank, Deutsche Bank Trust, HSBC, J.P. Morgan, and Standard Chartered); *In re Aso*, No. 19-MC-190 (JGK)(JLC) 2019 WL 3244151, at \*2 (S.D.N.Y. July 19, 2019) (same for HSBC and Goldman Sachs); *In re Iraq Telecom Ltd.,* No. 18-MC-458 (LGS)(OTW), 2019 WL 3798059, at \*3 (S.D.N.Y. Aug 13, 2019), *reconsideration denied,* No. 18-MC-458 (LGS)(OTW), 2019 WL 5080007 (S.D.N.Y. Oct. 10, 2019) (same for Wells Fargo).

The Application thus satisfies the first requirement of Section 1782, that the Correspondent Banks reside or are found in the Southern District.

**2.      The Discovery Sought is "For Use" in a Foreign Proceeding**

Second, the application must establish that the requested discovery is "for use" in a proceeding before a foreign tribunal or in a foreign proceeding. *See In re the Application of Dreymoor Fertilizers Overseas Pte Ltd.*, 20-MC-192, Order [Docket No. 7] (S.D.N.Y. May 18,

16

2020). As discussed further below, (1) the Cayman Court liquidating AIML in the Winding Up Proceeding in the Cayman Islands qualifies as a foreign tribunal and the Contemplated Cayman Litigation constitutes a foreign proceeding under Section 1728; and (2) the Requested Discovery is for use in that foreign proceeding.

(a)   **The Cayman Court is a Foreign Tribunal and the Contemplated Cayman Litigation is a Foreign Proceeding**

The JOLs were appointed as the Joint Official Liquidators of AIML in the Winding Up Proceeding pending before the Cayman Court. Courts have held that an insolvency proceeding before a foreign tribunal qualifies under Section 1782. *See In the Matter of Lancaster Factoring Co.*, 90 F.3d 38, 42 (2d Cir. 1996); *In re Application of Nicholas T.C. Hill*, No. M19-117, 2005 WL 1330769, at *4 (S.D.N.Y. June 3, 2005). Further, the courts in this District have found that the Cayman Islands courts qualify as a "foreign or international tribunal" for purposes of Section 1782. *See, e.g., Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*, 785 F. Supp. 2d 434, 438 (S.D.N.Y. 2011); *Gushlak*, 486 F. App'x at 216–17.

The Contemplated Cayman Litigation qualifies as a proceeding in a "foreign or international tribunal" for purposes of Section 1782. In the Second Circuit, "where an applicant has not yet initiated a foreign proceeding, [1782] discovery is available when the materials may help the applicant either to plead or to prove the anticipated claims. Indeed, 'the foreign proceeding need not be pending, so long as it is within reasonable contemplation.'" *In re Mangouras,* No. 17-MC-172, 2017 WL 4990655, at *5 (S.D.N.Y. Oct 30, 2017) (citing *Mees v. Buiter*, 793 F.3d 291, 299 (2d Cir. 2015)); *see also Intel*, 542 U.S. at 259 (foreign proceeding need not have actually commenced at the time when Section 1728 discovery is sought; it need only "be within reasonable contemplation").

17

A petitioner need only "provide some objective indicium that the action is being contemplated." *In re Kiobel*, 16 Civ. 7992, 2017 WL 354183, *3 (S.D.N.Y. Jan. 24, 2017) (citation omitted) (rev'd on other grounds). Here, the JOLs will use the Requested Discovery to plead and prove their claims in the Contemplated Cayman Litigation. Specifically, the JOLs have taken steps establishing that the Contemplated Cayman Litigation is "within reasonable contemplation" by conducting a comprehensive investigation relating to potential claims, including a forensic examination of the books and records of AIML to determine the AMN Payments, and retaining Cayman counsel to evaluate the potential claims that may be included as part of the Contemplated Cayman Litigation (*see* Sybersma Declaration, ¶ 27). *See In re IJK Palm LLC*, No. 3:16MC171(RNC), 2019 WL 2191171, at *1, *4 (D. Conn. Jan. 30, 2019) (holding potential lawsuits in the Cayman Islands constituted a reasonably contemplated foreign proceeding where the petitioner had hired attorneys, investigated parties, and conducted a thorough review of its own files); *In re Hornbeam Corp.*, 722 F. App'x 7, 9-10 (2d Cir. 2018) (summary order) (holding that a foreign proceeding was reasonably contemplated where the applicant "represented that it intended to initiate further litigation" and "articulated a theory on which it intended to litigate"); *In re Furstenberg Fin. SAS*, 2018 WL 3392882, at *4 (holding that for use requirement has been met where petitioners swore that they intended to file a criminal complaint in Luxembourg Criminal Court and articulated a specific legal theory on which they intended to rely); *see also In re Bracha Found.*, 663 F. App'x 755, 764 (11th. Cir. 2016) (affirming district court's decision that foreign proceeding was within reasonable contemplation because the applicants "have represented their intention to return to litigation in the BVI and have articulated a theory upon which they intend to litigate."); *Bravo Express Corp. v. Total Petrochemicals & Ref. U.S.*, 613 F. App'x 319, 323 (5th Cir. 2015) (finding that the application was for use in a contemplated proceeding because,

*inter alia*, the applicant filed a "sworn affidavit" from his foreign lawyer that he had prepared papers).

          **(b)**      **The Requested Discovery is "For Use" in a Foreign Proceeding**

The Requested Discovery is also for "use" in the Contemplated Cayman Litigation. Notably the JOLs are not required to show that the information sought would be discoverable or admissible in the foreign proceeding. *Brandi-Dohrn*, 673 F.3d at 82 ("[A]s a district court should not consider the *discoverability* of the evidence in the foreign proceeding, it should not consider the *admissibility* of evidence in the foreign proceeding in ruling on a section 1782 application." (emphasis in original). Rather, the Application only need to show that they have "the *practical ability* . . . to place a beneficial document – or the information it contains – before a foreign tribunal." *In re Accent Delight Int'l Ltd.*, 869 F. 3d 121, 131 (2d Cir. 2017) (emphasis in original).

As discussed above, the discovery sought will be used to support the JOLs claims in the Contemplated Cayman Litigation or otherwise in the Winding Up Proceeding.

          **3.**      **The JOLs are "Interested Persons"**

Lastly, Section 1782 requires persons seeking discovery to show that they possess a reasonable interest in the foreign proceeding. While Section 1782 broadly covers those with the right to participate and submit evidence in a foreign proceeding, there is "[n]o doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782." *Intel*, 542 U.S. at 256. The JOLs are the Cayman Court-appointed Joint Official Liquidators of AIML and will be the plaintiff in the Contemplated Cayman Litigation, and are, therefore, an "interested party" under Section 1782.

C.    **The Discretionary Factors of Section 1782**
      **Weigh in Favor of the JOLs' Application**

Once a petitioner has met the statutory requirements of Section 1728, the Court has the

discretion to consider additional factors before granting discovery. Each of these factors weighs in

favor of granting the Petitioners' Application and the discovery requested herein:

1.    **The First Discretionary Factor**

The first discretionary factor asks whether the party from whom discovery is sought is a

party to the foreign proceeding.  "[W]hen the person from whom discovery is sought is a

participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as

it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Intel*,

542 U.S. at 264.  The Correspondent Banks will not be parties to the Contemplated Cayman

Litigation. *See* Sybersma Declaration, ¶ 24. As such, this factor weighs in favor of granting

discovery.

2.    **The Second Discretionary Factor**

Under the second discretionary factor, this Court should look to whether the foreign

tribunal would be receptive to evidence obtained through Section 1782.  *See In re OOO*

*Promnefstroy,* No. M19-99(RJS), 2009 WL 3335608, at *7 (S.D.N.Y. Oct. 15, 2009) (describing

the second *Intel* factor as inquiring into whether the foreign proceeding would "*reject* evidence

obtained with the aid of section 1782") (citation omitted).  There is a strong presumption that the

foreign tribunal will be receptive to evidence obtained in the United States, with the Second Circuit

holding that "[a]bsent specific directions to the contrary from a foreign forum, the statute's

underlying policy should generally prompt district courts to provide some form of discovery

assistance." *Euromepa*, 51 F.3d at 1102.  A court should deny discovery on the basis of lack of

receptiveness only where it is provided with "*authoritative proof* that [the] foreign tribunal would reject evidence obtained with the aid of section 1782." *Id.* at 1100 (emphasis added).

The Cayman Islands courts are receptive to discovery obtained via Section 1782. In *Lyxor Asset Management S.A. v. Phoenix Meridian Equity Limited,* the Cayman Islands Court of Appeals specifically allowed a party to obtain discovery in the United States under Section 1782, stating that "*prima facie* a party who can invoke the jurisdiction of the U.S. District Court under § 1782 may choose to do so." 2009 CILR 553, 575 (Sep. 24, 2009); *see also* Sybersma Declaration, **Exhibit U**. "[F]ar from being hostile to Cayman litigants seeking evidence under U.S. law, the Cayman courts are in fact receptive to evidence obtained through U.S. discovery procedures, even if such evidence may not be discoverable under Cayman law." *In re Platinum Partners Value Arbitrage Fund L.P.,* 583 B.R. 803, 816-17 (Bankr. S.D.N.Y. 2018); *see also Sandra Holding Ltd. v. Al Saleh*, No. 18-MC-91406-PBS, 2019 WL 3072197, at *4 (D. Mass. July 15, 2019) (finding Cayman Grand Court "receptive" to accepting discovery obtained pursuant to Section 1782); *In re IJK Palm LLC*, 2019 WL 2191171, at *6 (finding there is "no legal barrier to the use of the requested discovery in Cayman Island courts"); *In re Penner*, No. 17-CV-12136-IT, 2017 WL 5632658, at *3 (D. Mass. Nov. 22, 2017) (agreeing with the applicant that "the [Cayman] Grand Court is open to receiving § 1782 discovery.").

As such, this second factor weighs in favor of granting the Application.

### 3.    The Third Discretionary Factor

The third discretionary factor enables courts to determine whether a petitioner, in bad faith, is attempting to "circumvent foreign proof-gathering restrictions." *Minatec Fin. S.a.r.l. v. SI Gro. Inc.,* No. 1:08-cv-269, 2008 WL 3884374, at *8 (N.D.N.Y. Aug. 18, 2008) (internal quotation marks omitted). An application will be deemed to be in good faith "absent a persuasive showing

that a 1782 applicant ... is actively seeking to circumvent the foreign tribunal's discovery methods

and restrictions." *In re Application of Mesa Power Group,* LLC, 878 F. Supp. 2d 1296, 1305 (S.D.

Fla. 2012); *see also In re Veigam,* 746 F. Supp 2d 8, 18 (D.D.C. 2010) (burden of proof to establish

good faith is "de minimis").

The *Intel* Court expressly rejected the notion that Section 1782 requires that the evidence

sought must be discoverable in the foreign proceeding itself, and the Second Circuit has added that

the specific documents or testimony discovered need not be admissible abroad. *See Brandi-Dohrn*,

673 F.3d at 82 ("While *Intel* concerned the *discoverability* of evidence in the foreign proceeding,

we see no reason why it should not extend to the *admissibility* of evidence in the foreign

proceeding. As in *Intel*, there is no statutory basis for any admissibility requirement.") (emphasis

in original); *Intel*, 542 U.S. at 261 ("A foreign nation may limit discovery within its domain for

reasons peculiar to its own legal practices, culture, or traditions; such reasons that do not

necessarily signal objection to aid from United States federal courts.") Nor is there any

requirement that a petitioner must exhaust its remedies in the foreign court first. *See In re

Metallgesellschaft*, 121 F.3d at 79 ("a 'quasi-exhaustion requirement[]' finds no support in the

plain language of the statute and runs counter to its express purposes.")

Here, the Application does not "attempt to circumvent" proof-gathering restrictions of

Cayman courts. *See* Sybersma Declaration, ¶ 26; *see also In re IJK Palm LLC*, 2019 WL 2191171,

at *6 (holding the third discretionary factor favored granting discovery due to stringent pleading

standard in actions brought in Cayman courts).

As such, the third discretionary factor also weighs in favor of granting the Application.

### 4. The Fourth Discretionary Factor

The fourth discretionary factor looks to whether the requests are "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. The standard is substantially the same as in ordinary domestic civil litigation under the Federal Rules of Civil Procedure. "The reference in § 1782 to the Federal Rules suggests that under ordinary circumstances the standards for discovery under those rules should also apply when discovery is sought under the statute."[22] *In re Bayer AG*, 146 F.3d 188, 195 (3d Cir. 1998).

Here, the Requested Discovery is narrowly tailored (e.g. the subpoenas reference specific entities about which the JOLs seek documents and information), maintained in the regular course of business of the Correspondent Banks, and directly relevant to the issues in the Contemplated Cayman Litigation. The JOLs have already identified certain bank accounts through which certain of the transfers were processed, and have identified the likely Correspondent Bank related to such account *See* Sybersma Declaration, Schedule B (ABN Amro – Citibank; Deutsche Bank – Deutsche Bank Trust; Standard Chartered – Standard Chartered; RBS – Wells Fargo; Credit Suisse – Bank of New York Mellon; CBD (Commercial Bank of Dubai) – Bank of America; Mashreqbank – Mashreqbank NY; Barclays - Barclays Bank PLC, New York). The JOLs investigation has revealed that many other transfers occurred through other bank accounts, and the Correspondent Banks are likely to have served as correspondent banks for U.S. Dollar transfers between the parties related to same. Indeed, whatever burden the Correspondent Banks may incur by producing the Requested Discovery is both modest and proportionate given the circumstances.

---

[22] To the extent that the Court finds that the discovery requests are overbroad, it need not deny the Application altogether; rather it may exercise its authority under Federal Rule of Civil Procedure 26 to limit the requests, thereby reducing the burden on the Correspondent Banks. *See Application of Malev Hungarian Airlines*, 964 F.2d 97, 102 (2d Cir. 1992) ("On remand, we wish to note that the district court can utilize its powers under the Federal Rules of Civil Procedure to lessen significantly the burden of handling this discovery."); *see also* Fed.R.Civ.P.26(b)(2)(C)(i); Fed.R.Civ.P.26(c).

23

The JOLs seek documents and information from the Correspondent Banks that bears directly on the transactions at issue in the Contemplated Cayman Litigation. Courts in this district have approved similar documents requests directed to correspondent banks in connection with applications pursuant to Section 1782. *See, e.g., In re Iraq Telecom Ltd.,* No. 18-MC-458 (LGS)(OTW), 2019 WL 3798059, at *5 (S.D.N.Y. Aug 13, 2019)*; In re the Application of Dreymoor Fertilizers Overseas Pte Ltd.*, 20-MC-192, Order [Docket No. 7] (S.D.N.Y. May 18, 2020); *In re Hornbeam Corp.,* No. 14 Misc. 424, 2014 WL 8775453, at *5 (S.D.N.Y. Dec. 24, 2014).

## V.    CONCLUSION

For the foregoing reasons, the Petitioners respectfully request that the Court (1) grant the Application; (2) enter the Proposed Order attached as **Exhibit A** to the Sybersma Declaration; (3) authorize the JOLs, pursuant to Section 1782, to serve the proposed subpoenas on the Correspondent Banks; and (4) grant such other and further relief as this Court deems just and proper.

Dated: June 12, 2020

KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP

By:

John E. Jureller, Jr.
Lauren C. Kiss
200 West 41st Street, 17th Floor
New York, NY 10036
Tel: (212) 972-3000
jjureller@klestadt.com
lkiss@klestadt.com

*Attorneys for Petitioners*
*David Soden and Stuart Sybersma as*
*Joint Official Liquidators of*
*Abraaj Investment Management Limited (in*
*Official Liquidation)*