UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
                                                                 :
In re Application of                                             :
                                                                 :
                                                                 :   Case No. 20-MC-00229
ABRAAJ INVESTMENT MANAGEMENT                                     :
LIMITED,                                                         :
                                                                 :
For An Order To Obtain Discovery For Use                         :
In Foreign Proceedings Pursuant To                               :
28 U.S.C. § 1782                                                 :
                                                                 :
                                                                 :
-----------------------------------------------------------------x

## AMENDED DECLARATION OF STUART SYBERSMA AS JOINT OFFICIAL LIQUIDATOR OF ABRAAJ INVESTMENT MANAGEMENT LIMITED IN SUPPORT OF APPLICATION

Pursuant to 28 U.S.C. § 1746, I, Stuart Sybersma, declare under penalty of perjury, as follows:

1.  Along with Paul Leggett of Deloitte & Touche, I have been appointed as one of the Joint Official Liquidators ("JOLs") of ABRAAJ Investment Management Limited (In Official Liquidation) ("AIML").

2.  In such capacity, I respectfully submit this amended declaration in support of the JOLs *ex parte* application ("Application")[1] for judicial assistance pursuant to 28 U.S.C. § 1782 ("Section 1782"). I am familiar with the information set forth in this declaration based upon my personal knowledge, interviews with witnesses, or upon review of applicable documents.

3.  The Application arises from certain claims that AIML has against, *inter alia*, Arif Masood Naqvi ("AMN"), the founder and former Chief Executive Officer of the Abraaj Group (defined later herein) and a former director of AIML, and Silverline Holdings Limited

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the accompanying Amended Memorandum of Law in support of the Application.

1

("Silverline"), a Cayman Islands company controlled by AMN, related to certain fraudulent and/or improper transfers made by AIML to AMN and Silverline, as well as certain other entities controlled by AMN or his family ("Other AMN Entities") and/or AMN's family ("AMN's Family").

4. Based upon the JOLs investigation to date, AMN misappropriated in excess of $385 million from AIML. The discovery sought herein will support the contemplated litigation by AIML and the JOLs in the Cayman Islands ("Contemplated Cayman Litigation") pursuing the avoidance and return of the fraudulently transferred funds. The JOLs, in their capacities as such, seek to recover these misappropriated funds for the benefit of the substantial creditors and investors of AIML.

5. As a result of the misappropriation by AMN, the JOLs intend to assert certain claims against AMN and his entities, including Silverline, for avoidance and repayment of the improperly transferred funds including based upon breach of fiduciary duty, unjust enrichment and knowing receipt under Cayman Islands law.

6. Accordingly, the JOLs bring this Application seeking permission to subpoena documents and information for use in the Contemplated Cayman Litigation from eighteen (18) non-party banks and banking associations located in the Southern District of New York ("Southern District"): (1) Bank of America, N.A. ("Bank of America"); (2) The Bank of New York Mellon ("Bank of New York"); (3) Citibank, N.A. ("Citibank"); (4) Deutsche Bank AG, New York Branch ("Deutsche Bank USA"); (5) Deutsche Bank Trust Company Americas ("Deutsche Bank Trust"); (6) Goldman Sachs & Co. LLC ("Goldman Sachs"); (7) HSBC Bank USA, N.A. ("HSBC"); (8) J.P. Morgan Chase Bank, N.A. ("J.P. Morgan"); (9) Mashreqbank PSC, New York Branch ("Mashreqbank"); (10) Standard Chartered Bank US (a/k/a/ Standard Chartered Bank, New York

Branch) ("Standard Chartered"); (11) Wells Fargo Bank N.A. ("Wells Fargo"); (12) Barclays Bank PLC, New York Branch ("Barclays"); (13) Société Générale, New York ("Société Générale"); (14) BNP Paribas USA Inc. ("BNP"); (15) Bank of Nova Scotia ("BNS"); (16) UBS AG, New York Branch ("UBS"); (17) Commerzbank AG, New York Branch ("Commerzbank"); and (18) The Clearing House Payments Company LLC ("CHPC") (collectively, the "Correspondent Banks").

7. A copy of the proposed Order is attached hereto as **Exhibit A**.

8. AIML's bank accounts show sums being transferred from AIML bank accounts to the Transferees; the JOLs already have that information. In fact, a large number of specific transactions have been expressly identified by the JOLs, and form the basis of the claims against AMN and Silverline, among others. The focus of the Application is to discover what happened to the funds once received by the Transferees. Through the proposed subpoenas *duces tecum* (described below), the JOLs seek from the Correspondent Banks documents and information in relation to, *inter alia*, USD transactions and transfers made by the Transferees over the period from January 1, 2009 through June 18, 2018 (the "Requested Discovery"). The JOLs investigation to date indicates that the Correspondent Banks would have processed such USD transactions and transfers.

A. **The Parties**

9. The Abraaj Group of Companies ("Abraaj Group") is a group of private equity funds with Abraaj Holdings ("AH") at the top of the structure.

10. AIML was the investment manager for many of the funds of the Abraaj Group. AIML managed over 40 private equity funds, principally structured as Cayman Islands exempted

limited partnerships, with more than 600 limited partner investors.  At its peak, AIML managed assets valued in excess of US$14 billion.

11.    AMN is the founder and former Group Chief Executive Officer of the Abraaj Group.  AMN was at all material times a director of AIML and AH.  AMN is a citizen of Pakistan, but currently resides in London under house arrest pending extradition to the United States.

12.    Silverline was incorporated in the Cayman Islands on April 6, 2010 as an exempted company and AMN was at all material times its sole shareholder.  Silverline's directors were (i) Rafique Lakhani, who was also managing director of AH, (ii) Alessandro Celano, who managed AMN's private affairs, and (iii) (from August 8, 2017) Asim Hameed, an employee of AIML subsidiary, ABRAAJ Capital Limited.

13.    The Transferees are principally AMN, Silverline, Other AMN Entities or AMN's Family.  The identities of the Transferees are set forth on **Schedule A** hereto.  Based upon the books and records of AIML, each of the Transferees received certain transfers or payments of funds misappropriated by AMN from AIML during the period from January 1, 2009 through June 18, 2018.

    **B.    United States Proceedings against AMN and AIML**

14.    On April 11, 2019, the United States Securities and Exchange Commission (the "SEC") filed a civil complaint in the United States District Court for the Southern District of New York ("SDNY District Court"), Case No. 19-cv-3244, charging AIML and AMN with violations of provisions of the Investment Advisers Act of 1940.  The SEC complaint concerns Abraaj Growth Markets Health Fund L.P., of which AIML was the investment manager.  It alleges that AIML and AMN defrauded the fund and U.S. investors by misappropriating over US$230 million from at least September 2016 until at least June 2018.  The SEC seeks a permanent injunction

against AIML and AMN, *inter alia*, prohibiting additional violations of the Investment Advisers Act, disgorgement of alleged ill-gotten gains with interest, and a civil monetary penalty. The SEC proceedings have been stayed pending the outcome of the criminal proceedings commenced by the DOJ (defined below), as discussed below.

15. On June 12, 2019, the United States Department of Justice (the "DOJ") filed a 16-count indictment naming AMN and other individuals as defendants.[2] AIML is not a defendant to these proceedings. The indictment, which supersedes two indictments unsealed earlier in 2019[3], alleges that between 2014 and 2018 the defendants engaged in a racketeering enterprise, and conspired to and committed securities and wire fraud by depriving investors of accurate information about material aspects of the Abraaj Group's financial health and misappropriating investor funds for illicit purposes. The DOJ further alleges that, during that same period, certain defendants engaged in money laundering, a conspiracy to defraud the United States by providing false information to a United States agency, theft of public funds, and theft of employee pension plan funds. The allegations primarily relate to three funds in the Abraaj Group for which AIML was investment manager, i.e. (i) Abraaj Private Equity Fund IV L.P., (ii) the Infrastructure and Growth Capital Fund L.P., and (iii) Abraaj Growth Markets Health Fund L.P. With two exceptions, the defendants, including AMN, have not yet entered pleas. On June 28, 2019, in the SDNY District Court, Mustafa Abdel-Wadood (a managing director of the Abraaj Group) pleaded guilty to the indictment, including to racketeering and securities and wire fraud. In his allocution, he stated that he took various steps "*at the direction of Arif Naqvi*" and referred to capitulating to "*Arif Naqvi's misconduct*". On July 26, 2021, in the SDNY District Court, Sivendran Vettivetpillai

---

[2] Mustafa Abdel-Wadood, Sivendran Vettivetpillai, Waqar Siddique, Rafique Lakhani, and Ashish Dave.
[3] On April 11, 2019, the DOJ unsealed criminal indictments filed in the SDNY District Court that named AMN and Mustafa Abdel-Wadood as defendants (19-cv-233). On April 16, 2019, the DOJ unsealed a criminal indictment filed in the SDNY District Court naming Sivendran Vettivetpillai as a defendant.

(a former managing partner of the Abraaj Group) pleaded guilty to the indictment, including to racketeering and securities and wire fraud.

16.     In April 2019, AMN was arrested at Heathrow Airport after the DOJ requested his arrest and extradition.  AMN is resisting extradition.  On May 2, 2019, AMN was granted bail on conditions including the payment of £15 million into court as security.  Having made this payment, AMN was released on bail on May 28, 2019.  AMN is subject to house arrest at his London property, and subject to requirements that he wears an electronic tag and surrenders his travel documents.   In January 2021, the English Court held that there were no bars to extradition under the Extradition Act 2003 of the United Kingdom and AMN's extradition case has been referred to the United Kingdom Secretary of State for her decision. I understand that AMN has a right to appeal the decision of the English Court but do not know whether that right has been exercised.

    **C.**     **The Cayman Islands Proceeding**

17.     The requested relief is for purposes of discovery in connection with the Contemplated Cayman Litigation, as well as a liquidation proceeding entitled *In the Matter of ABRAAJ Investment Management Limited,* Cause No. FSD 111 of 2018 (RMJ), commenced in the Grand Court of the Cayman Islands, Financial Division ("Cayman Court") on June 15, 2018 (the "Cayman Proceeding").

18.     On June 18, 2019, the Cayman Court appointed David Soden of Deloitte LLP and Stuart Sybersma of Deloitte & Touche as joint provisional liquidators of AIML and on September 11, 2019 as Joint Official Liquidators (the "JOLs") of AIML (the "Winding Up Order").  A copy of the Winding Up Order is attached hereto as **Exhibit B**.  On May 6, 2021, David Soden resigned as a JOL of AIML, with Paul Leggett of Deloitte & Touche being appointed as the successor JOL by the Order of the Cayman Court dated May 6, 2021.

19. Pursuant to the Winding Up Order, the JOLs were specifically authorized, *inter alia*, to exercise the following powers without further sanction from the Cayman Court: "(a) bring or defend any action or other legal proceeding in any jurisdiction in the name and on behalf of the Company …" *Id.* at ¶ 4(a).

### D. Alleged Misappropriation, Transfers and Payments

20. The JOLs forensic investigations have identified a significant number of transactions (over 3,700) which took place from 2009 to 2018 between AIML and AMN (and related entities), or which otherwise appear to be for AMN's benefit (collectively, the "AMN Payments"). The AMN Payments comprise both debits from and credits to AIML, with a gross value of approximately US$1.2 billion and a *net* value of more than US$385 million. The following table breaks down the AMN Payments by financial year:

| Financial Year[4] | Credit (US$) (Paid by or on behalf of AMN) | Debit (US$) (Paid by AIML) | Net payment/ (receipt) by AIML (US$) |
|---|---|---|---|
| 2009 | 84,855,375 | 118,120,950 | 33,265,576 |
| 2010 | 61,694,037 | 91,704,370 | 30,010,334 |
| 2011 | 156,503,509 | 149,428,552 | (7,074,957) |
| 2013 | 45,403,712 | 110,897,132 | 65,493,421 |
| 2014 | 3,928,219 | 60,823,608 | 56,895,389 |
| 2015 | 17,966,214 | 105,452,634 | 87,486,420 |
| 2016 | 1,667,865 | 62,700,537 | 61,032,672 |
| 2017 | 15,585,649 | 49,157,359 | 33,571,710 |
| 2018 | 7,199,605 | 32,301,507 | 25,101,902 |

---

[4] AIML's 2009 to 2011 financial years were from January 1 to December 31, respectively; its 2013 financial year was from January 1, 2012 to June 30, 2013; and its 2014 to 2018 financial years were from July 1 to June 30, respectively.

| Financial Year[4] | Credit (US$) (Paid by or on behalf of AMN) | Debit (US$) (Paid by AIML) | Net payment/ (receipt) by AIML (US$) |
|---|---|---|---|
| Total | 394,804,183 | 780,586,649 | 385,782,466 |

21.     The transactions took place between AIML and the following persons or entities: (i) AMN; (ii) Silverline; (iii) Other AMN Entities; (iv) AMN's Family; and (v) other related persons/entities.

22.     According to the JOLs' investigation, these transactions were recorded in AIML's accounting records as payments made to AMN or for his benefit. The majority by value of the transactions have been traced to actual cash transfers shown on bank statements.

23.     The following table show the split between the counterparties to the AMN Payments.

| Payee | Credit (US$) (Paid by or on behalf of AMN) | Debit (US$) (Paid by AIML) | Net payment/ (receipt) by AIML (US$) |
|---|---|---|---|
| AMN | 32,922,032 | 167,266,979 | 134,344,948 |
| Silverline | 73,163,489 | 272,667,308 | 199,503,820 |
| Other AMN Entities | 99,183,602 | 203,566,234 | 104,382,632 |
| AMN's Family | 0 | 1,153,829 | 1,153,829 |
| Others | 189,535,061 | 135,932,298 | (53,602,763) |
| Total | 394,804,183 | 780,586,649 | 385,782,466 |

E.     **Contemplated Cayman Litigation**

24.     The JOLs intend to pursue litigation in the Cayman Islands with respect to the AMN Payments.  Specifically, through the Contemplated Cayman Litigation, the JOLs may bring claims against, among others, AMN and Silverline, as well as the Other AMN Entities and AMN's

8

Family, relating to the misappropriated funds transfers and transactions. The JOLs have already retained counsel to evaluate and advise on the potential claims.

25. *The Correspondent Banks are not anticipated or intended to be participants in the Contemplated Cayman Litigation.*

26. Courts in the Cayman Islands are familiar with and receptive to discovery obtained via Section 1782 applications. Indeed, discovery obtained in connection with Section 1782 applications has been used in Cayman courts.[5]

27. Further, the Application does not "attempt to circumvent" proof-gathering restrictions of the Cayman courts nor hinder or restrict the Cayman court's ultimately authority to rule on issues pertaining to the admissibility of evidence. The Cayman court will not generally interfere with the admission of evidence that assists a party in its prosecution as long as it is lawfully obtained in the relevant jurisdiction, i.e. herein as the United States herein.

## REQUESTED DISCOVERY

28. AIML's bank accounts show sums being transferred from AIML bank accounts to the Transferees; the JOLs already have that information. In fact, a large number of specific transactions have been expressly identified by the JOLs, and form the basis of the claims against AMN and Silverline, among others. The focus of the Application is to discover what happened to the funds once received by the Transferees.

29. Through this Application, the JOLs seek the Requested Discovery – documents and information in the possession or control of the Correspondent Banks in relation to, *inter alia*, USD transactions and transfers made by the Transferees during the period from January 1, 2009 through June 18, 2018. The JOLs investigation to date indicates that the Correspondent Banks would have

---

[5] *See Lyxor Asset Management S.A. v. Phoenix Meridian Equity Limited*, 2009 CILR 553 (Sep. 24 2009) (a true copy of the opinion is attached hereto as **Exhibit U**.

processed such USD transactions and transfers.  In fact, the JOLs have already identified certain bank accounts through which certain of the transfers were processed, and have identified the likely Correspondent Banks related to such account *See* **Schedule B** (ABN Amro – Bank of America and Wells Fargo; Standard Chartered – Standard Chartered; RBS – Wells Fargo; Credit Suisse – Bank of New York; CBD (Commercial Bank of Dubai) – Citibank, Deutsche Bank Trust, Standard Chartered and Bank of New York; Mashreqbank – Mashreqbank NY, and Bank of America; Barclays - Barclays Bank PLC, New York).  The JOLs investigation has revealed that many other transfers occurred through other bank accounts, and the Correspondent Banks are likely to have served as correspondent banks for U.S. Dollar transfers between the parties related to same.

30. The JOLs request authority to serve the following proposed subpoenas to the Correspondent Banks:

   a. Attached hereto as **Exhibit C** is a draft subpoena *duces tecum* to Bank of America.

   b. Attached hereto as **Exhibit D** is a draft subpoena *duces tecum* to Bank of New York.

   c. Attached hereto as **Exhibit E** is a draft subpoena *duces tecum* to Citibank.

   d. Attached hereto as **Exhibit F** is a draft subpoena *duces tecum* to Deutsche Bank USA.

   e. Attached hereto as **Exhibit G** is a draft subpoena *duces tecum* to Deutsche Bank Trust.

   f. Attached hereto as **Exhibit H** is a draft subpoena *duces tecum* to Goldman Sachs.

   g. Attached hereto as **Exhibit I** is a draft subpoena *duces tecum* to HSBC.

   h. Attached hereto as **Exhibit J** is a draft subpoena *duces tecum* to J.P. Morgan.

   i. Attached hereto as **Exhibit K** is a draft subpoena *duces tecum* to Mashreqbank.

   j. Attached hereto as **Exhibit L** is a draft subpoena *duces tecum* to Standard Chartered.

k. Attached hereto as **Exhibit M** is a draft subpoena *duces tecum* to Wells Fargo.

l. Attached hereto as **Exhibit N** is a draft subpoena *duces tecum* to Barclays.

m. Attached hereto as **Exhibit O** is a draft subpoena *duces tecum* to Société Générale.

n. Attached hereto as **Exhibit P** is a draft subpoena *duces tecum* to BNP.

o. Attached hereto as **Exhibit Q** is a draft subpoena *duces tecum* to BNS.

p. Attached hereto as **Exhibit R** is a draft subpoena *duces tecum* to UBS.

q. Attached hereto as **Exhibit S** is a draft subpoena *duces tecum* to Commerzbank.

r. Attached hereto as **Exhibit T** is a draft subpoena *duces tecum* to CHPC.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Dated: September 16, 2021

*/s/ Stuart Sybersma*
_____
Stuart Sybersma
As Joint Official Liquidator of
ABRAAJ Investment Management
Limited (in official liquidation)

**SCHEDULE A**

**(TRANSFEREES)**

| |
|---|
| Arif Naqvi a/k/a Asif Masood Naqvi |
| Silverline Holdings Limited |
| AC Logistics Holdings Limited |
| ABRAAJ Employees 2 SPC Limited |
| Axil Private Equity Fund I L.P. |
| Ceres Agriculture Holdings Limited Cooperatief U.A. |
| Lavender Administration Limited |
| Steadfast HoldCo Limited |
| LSH Limited |
| Ahsan Naqvi |
| Faaris Naqvi |
| Fawzia Naqvi |
| Fayeeza Naqvi |
| Ovais Naqvi |
| Shahid Naqvi |
| Waqar Hassan Siddique |

**SCHEDULE B**

**(IDENTIFIED ACCOUNTS)**

| Account Name | Bank | Account No. | IBAN No. | Currency |
|---|---|---|---|---|
| Arif Masood Naqvi | ABN Amro | 000.02.27.52.366 | | USD |
| Arif Masood Naqvi | ABN Amro | 000.02.27.50.517 | | AED |
| Arif Naqvi | Deutsche Bank (Suisse) SA | 2006458822601 | CH7908659200645882601 | GBP |
| Arif Naqvi | Standard Chartered | 1314918801 | | AED |
| LSH Limited | Deutsche Bank (Suisse) SA | | CH2908659202645082601 | GBP |
| AC Logistics Holdings | RBS | AED-000022728085 | | AED |
| AC Logistics Holdings | RBS | USD-000022728058 | | USD |
| Lavender Administration | Barclays | 03325040 | | GBP |
| Lavender Administration | Mashreqbank | | AE390330000019000027034 | GBP |
| Lavender Administration | Barclays | 53655296 | GB13BARC20473553655296 | GBP |
| Lavender Administration | Barclays | 63677249 | | GBP |
| Lavender Administration | Credit Suisse | 1604752-02-5 | CH1908659202393082601 | GBP |
| Lavender Administration | Credit Suisse | 1604752-02-4 | CH1404835160475202004 | USD |
| Lavender Administration | Credit Suisse | 1604752-02-3 | CH4104835160475202003 | EUR |
| Lavender Administration | Credit Suisse | 1604752-02-2 | CH2504835160475202000 | USD |
| Lavender Administration | Mashreqbank | 19000027033.00 | AE660330000019000027033 | AED |
| Lavender Administration | ABN Amro | 22815066 (Sort Code) | | |
| Silverline | RBS | | | USD |
| Silverline | CBD | 2001620711 | AE520230000002001620711 | USD |
| Silverline | RBS | 000.21.28.52.034 | | EUR |
| Silverline | CBD | 2001620703 | | AED |
| Silverline | RBS | 000.02.28.44.759 | | AED |
| Silverline | RBS | 000.02.28.44.767 | | USD |

13

| Account Name | Bank | Account No. | IBAN No. | Currency |
|---|---|---|---|---|
| Steadfast HoldCo Limited | ABN Amro Bank NV UAE | 6030586/001.000.826 | | GBP |
| Steadfast HoldCo Limited | ABN Amro Bank NV UAE | 6030586/001.000.840 | | USD |