```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
                                                       :
In re Application of Abraaj Investment                 :
Management Limited for an Ex Parte Order to            :    20-MC-229 (VSB)
Conduct Discovery for Use in Foreign                   :
Proceedings Pursuant to 28 U.S.C. 1782                 :    OPINION & ORDER
                                                       :
-------------------------------------------------------X
```

Appearances:

John Evans Jureller, Jr.
Klestadt, Winters, Jureller, Southard & Stevens LLP
New York, New York
*Counsel for Petitioner*

VERNON S. BRODERICK, United States District Judge:

Applicants David Soden[1] and Stuart Sybersma ("Applicants"), acting as liquidators of ABRAAJ Investment Management Limited ("AIML"), filed this ex parte application seeking discovery in aid of a foreign proceeding pursuant to 28 U.S.C. § 1782 (the "Application"). (Docs. 1–7.)  Specifically, they seek an order granting them the authority to subpoena records from eighteen banks (collectively, the "Banks") that they intend to use in support of litigation in the Cayman Islands in which they have already, or intend to allege, fraudulent transfer claims. (Doc. 7 at 2–3.)  On August 26, 2021, I denied the Application without prejudice to renew, because I found that the Applicants did not make a sufficient showing for me to determine that the Banks were "found" in this district within the meaning of § 1782.  (Doc. 9.)  Since then, the Applicants have filed amended papers in support of the Application.  (Docs. 10–12.)

Because Applicants have made a sufficient showing that the Banks are "found" in this District within the meaning of § 1782, and the discretionary factors identified in *Intel Corp. v.*

---

[1] Paul Leggett replaced David Soden as an Official Liquidator on May 6, 2021.  (Doc. 13.)

*Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–65 (2004), weigh in favor of granting the request, their application is GRANTED.

I.     **Background**[2]

AIML is a Cayman Islands exempted company that is or was part of the "Abraaj Group of Companies," or "Abraaj Group," a collection of private equity funds and other investment and wealth management concerns. (*See* Sybersma Decl. ¶¶ 9–10.)[3] AIML and the Abraaj Group were both founded by Arif Masood Naqvi ("Naqvi"), a citizen of Pakistan who resides in London. (*Id.* ¶ 11.)

Applicants aver that Naqvi used his control over AIML and the Abraaj Group to make fraudulent transfers of funds belonging to investors from AIML to entities he controls and various members of his family.[4] (*See id.* ¶¶ 12–13.) Naqvi is also a defendant in a United States Securities and Exchange Commission ("SEC") civil action and a Department of Justice ("DOJ") criminal indictment, both of which arise from alleged improprieties with and misappropriation of Abraaj Group investor funds. (*See id.* ¶¶ 14–15 (citations omitted)). At the time of Applicants' last filings, Naqvi was under house arrest in London and awaiting a decision on his extradition to the United States.[5] (*Id.* ¶ 16.)

AIML is currently undergoing a winding-up proceeding in the Grand Court of the Cayman Islands, for which Applicants were appointed as AIML's liquidators. (*Id.* ¶ 17 & Ex.

---

[2] The following is only a brief summary of background information to provide some context for this Opinion & Order.  I make no findings of fact.

[3] "Sybersma Decl." refers to the Amended Declaration of Stuart Sybersma in Support of Application, (Doc. 11), and the exhibits thereto.

[4] I will refer to these as the "Naqvi Transfers."

[5] Naqvi's final challenge to his extradition was denied on March 8, 2023.  *See* Jane Croft and Simeon Kerr, Abraaj founder fails in final attempt to prevent extradition to the US, FINANCIAL TIMES (March 8, 2023), https://www.ft.com/content/006d0089-8046-47ce-bd87-a07239b061cf.

B.) They seek discovery to determine "what happened," with the Naqvi Transfers "once received by the" relevant transferees, (Am. Mem. 9)[6], and they contemplate pursuing litigation against Naqvi and his associates in the Cayman Islands for facts arising from and relating to the Naqvi Transfers, (*id.*).[7] To this end, Applicants seek judicial order pursuant to § 1782 authorizing them to issue subpoenas to the Banks: (1) Bank of America, N.A. ("Bank of America"); (2) The Bank of New York Mellon ("Bank of N.Y."); (3) Citibank, N.A. ("Citibank"); (4) Deutsche Bank AG, New York Branch ("Deutsche Bank N.Y."); (5) Deutsche Bank Trust Company Americas ("Deutsche Bank Trust"); (6) Goldman Sachs & Co. LLC ("Goldman Sachs"); (7) HSBC Bank USA, N.A. ("HSBC"); (8) J.P. Morgan Chase Bank, N.A. ("JP Morgan"); (9) Mashreqbank PSC, New York Branch ("Mashreqbank"); (10) Standard Chartered Bank US (a/k/a/ Standard Chartered Bank, New York Branch) ("Standard Chartered"); (11) Wells Fargo Bank N.A. ("Wells Fargo"); (12) Barclays Bank PLC, New York Branch ("Barclays"); (13) Société Générale, New York ("Société Générale"); (14) BNP Paribas USA Inc. ("BNP"); (15) Bank of Nova Scotia ("BNS"); (16) UBS AG, New York Branch ("UBS"); (17) Commerzbank AG, New York Branch ("Commerzbank"); and (18) The Clearing House Payments Company LLC ("CHPC").

---

[6] "Am. Mem." refers to the Amended Memorandum of Law in Support of Ex Parte Application of Joint Official Liquidators of Abraaj Investment Management Limited For an Order to Conduct Discovery For Use in Foreign Proceedings Pursuant to 28 U.S.C. § 1782, (Doc. 10).

[7] On November 11, 2022, Applicants filed a letter providing an update on the status of the proceedings in the Cayman Islands. The proceedings are ongoing, and Applicants claim that the Application "will have a significant impact on ultimately determining the viability of these claims, and any recoveries to creditors of the estate." (Doc. 13.) The necessity of these documents was re-emphasized in Applicants' status update filed on March 22, 2023. (Doc. 15.)

3

## II.     Discussion

### A.     *Applicable Law*

"[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte.* The respondent's due process rights are not violated because he can later challenge any discovery request by moving to quash pursuant to Federal Rule of Civil Procedure 45(c)(3)." *In re Hornbeam Corp.*, 722 F. App'x 7, 11 (2d Cir. 2018) (quoting *Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012)).

Section 1782 contains three statutory requirements: "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign [or international] tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 97 (2d Cir. 2020) (quoting *Mees v. Buiter*, 793 F.3d 291, 297 (2d Cir. 2015) (alteration in original)).

"Section 1782 does not define what it means for an entity to reside or be found in a district." *In re Sargeant*, 278 F. Supp. 3d 814, 819 (S.D.N.Y. 2017). Several courts in this District, however, have recognized that "[a]t minimum, [ ] compelling an entity to provide discovery under § 1782 must comport with constitutional due process." *Id.* at 820; *see also In re Fernando Celso De Aquino Chad*, No. 19-MC-261 (WHP), 2019 WL 2502060, at *2 (S.D.N.Y. June 17, 2019) (quoting *Matter of Fornaciari for Order to Take Discovery Pursuant to 28 U.S.C. § 1782*, 2018 WL 679884, at *2 (S.D.N.Y. Jan. 29, 2018)); *In re Fornaciari*, 17-MC-521 (WHP), 2018 WL 679884, at *2 (S.D.N.Y. Jan 29, 2018) (quoting *In re Sargeant*, 278 F. Supp. 3d at 820); *Australia & New Zealand Banking Grp. Ltd. v. APR Energy Holding Ltd.*, No. 17-MC-216 (VEC), 2017 WL 3841874, at *3 (S.D.N.Y. Sept. 1, 2017) ("Regardless of what

section § 1782 requires, the Constitution's due process protections apply."). The Second Circuit agreed with this reading, holding that "the statutory scope of 'found' extends to the limits of personal jurisdiction consistent with due process." *In re del Valle Ruiz*, 939 F.3d 520, 527 (2d Cir. 2019).

"Once the statutory requirements are met, a district court may order discovery under § 1782 in its discretion, taking into consideration the twin aims of the statute, namely, providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 117 (2d Cir. 2015) (citation omitted). "The Supreme Court has identified four" additional discretionary factors relevant to this determination:

> (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which case "the need for § 1782(a) aid generally is not as apparent"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome."

*Mangouras*, 980 F.3d at 97–98 (citing, ultimately, *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–65 (2004)) (alterations omitted).

"[I]t is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright." *Mees*, 793 F.3d at 302 (citation omitted).

5

B.   *Application*

Here, it is clear from Applicants' filings that the second and third elements of § 1782's statutory factors are met.  "[T]he discovery sought is for use in a foreign proceeding or tribunal," *In re Al-Attabi*, 21-MC-207 (VSB), 2021 WL 4027021, at *2 (S.D.N.Y. Sept. 3, 2021) (internal quotation marks omitted), because Applicants contemplate "litigation in the Cayman Islands" against Naqvi and those entities and individuals to whom he allegedly wrongfully transferred money, (Am. Mem. 9).  The Applicants would "be the plaintiff in the [c]ontemplated Cayman [l]itigation" against Naqvi and his associates, (*see id.* at 22), which renders them interested parties, *Intel*, 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the interested person[s] who may invoke § 1782.") (internal quotation marks omitted).

With regard to the first factor's consideration of whether the eighteen Banks are "found" in this district within the meaning of § 1782, Applicants argue that they are, because they are either subject to "general personal jurisdiction" in this District, or they are subject to "specific personal jurisdiction" in this District.  (*See* Am. Mem. at 13–19.)

1. **Whether the Banks are "Found" in this District**

   a. General Personal Jurisdiction

"[O]nly a limited set of affiliations with a forum will render a defendant amenable to" general jurisdiction, also called "all-purpose jurisdiction[,] there." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).  For a corporation, general jurisdiction is typically available only in the forum in which it is incorporated or the forum in which its principal place of business is located.  *See Gucci Am., Inc. v. Li*, 768 F.3d 122, 135 (2d Cir. 2014) (citing *Daimler*, 571 U.S. at 139 & n.19).  The fact that a corporation does business in a state, even "substantial, continuous,

6

and systematic" business, is not necessarily enough to subject the corporation to general jurisdiction in the state. *See Daimler*, 571 U.S. at 137–38. Rather, the corporation's affiliations with the forum must be "so continuous and systematic as to render it essentially at home in the forum State." *Id.* at 139 (cleaned up). Only in an "exceptional case" does a corporation have "operations in a forum other than its formal place of incorporation or principal place of business" that are "so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 139 n.19; *see also Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016) ("in our view *Daimler* established that, except in a truly 'exceptional' case, a corporate defendant may be treated as 'essentially at home' only where it is incorporated or maintains its principal place of business").

Applicants say that thirteen of the eighteen Banks are subject to general jurisdiction here because either they "or their parent corporations[] maintain their headquarters or principal place of business" in this District. (Am. Mem. 13–14.) In general, the law regards parent and subsidiary entities as separate for jurisdictional purposes. "[T]he presence of [a] subsidiary alone does not establish the parent's presence in that state." *Duravest, Inc. v. Viscardi, A.G.*, 581 F. Supp. 2d 628, 639 (S.D.N.Y. 2008) (quoting *Jazini by Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir.1998)). Accordingly, for each of the Banks that Applicants seek to subpoena in their Application, I must determine whether Applicants have at least made a prima facie case to establish that a Bank is either incorporated in New York or has its principal place of business[8] in

---

[8] Applicants cite to SEC filings for HSBC and JP Morgan, which state that the "principal executive offices" are in New York City, in support of general jurisdiction. However, the Supreme Court has expressly rejected "that the mere filing of a form like the Securities and Exchange Commission's Form 10–K listing a corporation's 'principal executive offices' would, without more, be sufficient proof to establish a corporation's 'nerve center' [and therefore, its principal place of business.]" *Hertz Corp. v. Friend*, 559 U.S. 77, 97 (2010). The supporting exhibit for Goldman Sachs, (Doc. 12-10), lists 200 West Street, New York, New York as the "principal executive office" but the 2022 Annual Report refers to this address as Goldman Sachs' headquarters. *See* Goldman Sachs, Annual Report 2022 (Letter to Shareholders) https://www.goldmansachs.com/investor-relations/financials/current/annual-reports/2022-annual-report/multimedia/letter-to-shareholders.pdf.

New York. *See Gucci Am.*, 768 F.3d at 141 n.20.

Applicants have made out their prima facie case of general personal jurisdiction for eleven of the Banks. For these eleven Banks—all Banks other than Bank of America, HSBC, JP Morgan, Mashreqbank, Wells Fargo, BNS, and Commerzbank—Applicants proffered facts demonstrating that they headquartered in New York. (*See* Jureller, Jr. Decl.[9] ¶¶ 8, 10, 12, 13, 18, 20, 22, 23, 24, 33, Ex. 10. For the remaining seven Banks that are not incorporated in New York and do not have their principal place of business in this District, the analysis must turn to whether I have specific personal jurisdiction over these Banks.

### b. Specific Personal Jurisdiction

In determining whether the Remaining Banks[10] are subject to specific personal jurisdiction over non-parties, the Second Circuit has adopted a two-step analysis – "'first assess the connection between the nonparty's contacts with the forum and the order at issue' and (2) 'then decide whether exercising jurisdiction for the purposes of the order would comport with fair play and substantial justice.'" *In re del Valle Ruiz*, 939 F.3d at 529 (quoting *Gucci Am.*, 768 F.3d at 137). In the context of "§ 1782 respondent's nonparty status . . . where the discovery material sought proximately resulted from the respondent's forum contacts, that would be sufficient to establish specific jurisdiction for ordering discovery. That is, the respondent's having purposefully availed itself of the forum must be the primary or proximate reason that the evidence sought is available at all." *In re del Valle Ruiz*, 939 F.3d at 530. The Second Circuit reached this holding by making reference to how, in "the liability context," "'[t]he exercise of

---

[9] "Jureller, Jr. Decl." refers to the Declaration of John E. Jureller, Jr. in Support of the Ex Parte Application, (Doc. 12), and the exhibits thereto.

[10] "Remaining Banks" refers to Bank of America, HSBC, JP Morgan, Mashreqbank, Wells Fargo, BNS, and Commerzbank.

specific jurisdiction depends on in-state activity that *gave rise to the episode-in-suit*." *Id.* (quoting *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016)) (emphasis in original).

For the Remaining Banks in question, Applicants discuss at length how the Banks "consistently transact business in" this District "by acting as . . . intermediar[ies]" for foreign banks.  (*See* Am. Mem. 15–16.)  Applicants argue that there is specific jurisdiction in this District because those Banks might have been involved in the Naqvi Transfers and the "evidence sought by the JOLs from the Correspondent Banks is the proximate results of their contacts here [in this District]."  (Am. Mem 15.)

For one Bank—Mashreqbank—Applicants state that it is the correspondent bank of a foreign bank that received funds in the Naqvi Transfers.  (*See* Jureller, Jr. Decl. ¶ 29 n.26 & Ex. 29 (referring to Mashreqbank's New York branch as the "Exclusive Correspondent Banking Branch")).  This suggests that Mashreqbank actually had "contacts with the forum" in the course of the Naqvia Transfers, which is sufficient to support the "discovery order" that Applicants seek.  *See Gucci Am.*, 768 F.3d at 141 (citation omitted).

With regard to Bank of America and Wells Fargo, Applicants explain that these Banks serve as a "correspondent bank" "for US Dollar funds transfers" and the "JOLs investigation has revealed sums being transferred from AIML bank accounts to the Transferees' bank accounts" at Mashreqbank, ABN Amro, or Royal Bank of Scotland.  (Jureller, Jr. Decl. ¶ 26, 28) (Bank of America is a correspondent bank for Mashreqbank PSC and ABN Amro; Wells Fargo is a correspondent bank for ABN Amro and the Royal Bank of Scotland.)  Wells Fargo and Bank of America potentially serving as intermediaries for the Naqvi Transfers is sufficient to show that "discovery material sought proximately resulted from the respondent's forum contacts."  *In re*

*del Valle Ruiz*, 939 F.3d at 530.  The fact that Applicants cannot point to specific intermediary transactions is not cause for rejecting jurisdiction in this case; in fact, it is the very reason that Applicants are seeking to subpoena the entities.  *See e.g., In re JSC BTA Bank*, 577 F. Supp. 3d 262, 266 (S.D.N.Y. 2021), *appeal dismissed* (May 10, 2022) (finding the § 1782 requirements were met where intermediary bank "does business (including correspondent and intermediary banking) in the Southern District of New York" but applicants did not provide evidence of specific transactions through the intermediary banks); *see also In re Inv. Bank PSC*, 567 F. Supp. 3d 449, 451 (S.D.N.Y. 2021) (finding the § 1782 requirements were met where intermediary bank "does business in the Southern District of New York" and applicants sought subpoenas "to reveal the existence and nature of suspected transactions[.]")

With regard to HSBC, JP Morgan, BNS, and Commerzbank, these Banks have clearly "purposefully directed [their] activities at [the District]," (*In re del Valle Ruiz*, 939 F.3d at 529 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)), as they "regularly transact[ ] business in the Southern District and maintain[ ]" an office or branch in this District. (Jureller, Jr. Decl. ¶ 16, 17, 31, 32.)  The transactions involving the Transferees for which Applicants are requesting discovery "arise out of or relate to" the Banks' activities in this District.  *In re del Valle Ruiz*, 939 F.3d at 529 (quoting *Rudzewicz*, 471 U.S. at 472).  Where, as here, "the Subpoenas, which seek discovery related to transactions routed through these New York accounts, are themselves connected to the Banks' contacts with the forum" "this Court may readily conclude that there is a sufficient nexus between the Banks' activities in the forum and the Subpoenas[.]" *Nike*, 349 F. Supp. 3d at 332.

Once minimum contacts have been established, due process requires courts to determine "whether exercising jurisdiction for the purposes of the order would comport with fair play and

10

substantial justice.'" *In re del Valle Ruiz*, 939 F.3d at 529 (quoting *Gucci Am.,* 768 F.3d at 137); *see also Nike,* 349 F. Supp. 3d at 329.  Here, I find that compliance with the subpoenas comports with fair play and substantial justice as the subpoenas are not overly burdensome and the Remaining Banks have been subject to similar subpoenas in this District on numerous occasions. *See e.g., In re Hellard,* No. 121MC00864GHWKHP, 2022 WL 656792, at *2 (S.D.N.Y. Mar. 4, 2022) (granting applicants request to subpoena, among others, Bank of America N.A., HSBC, JP Morgan, and Commerzbank AG); *In re Dreymoor Fertilizers Overseas Pte. Ltd.*, No. 20 MISC. 192 (PGG), 2022 WL 2702617, at *1 (S.D.N.Y. July 12, 2022) (granting applications request to subpoena, among others, HSBC, JP Morgan, Wells Fargo Bank, N.A., Commerzbank AG, and Bank of America, N.A.);  *In re Inv. Bank PSC*, 567 F. Supp. 3d at 452 (granting applications request to subpoena, among others, the Bank of Nova Scotia, Commerzbank AG, New York Branch, HSBC, Wells Fargo Bank, N.A., JP Morgan, and Mashreqbank PSC); *In re JSC BTA Bank*, 577 F. Supp. 3d at 268, *appeal dismissed* (May 10, 2022) (granting applications request to subpoena, among others, Bank of America N.A., Commerzbank AG, HSBC, JP Morgan, and Wells Fargo Bank).  Furthermore, the subpoenas do not violate the concepts of fair play and substantial justice "[b]ecause the respondent banks will have the opportunity to challenge [Applicant]'s subpoena once served (including but not limited to a challenge as to whether section 1782 assistance should be afforded at all)[.]" *In re Inv. Bank PSC*, 567 F. Supp. 3d at 452.

### 2.  The Discretionary *Intel* Factors

Because Applicants meet the three statutory factors, I proceed to determine whether the discretionary *Intel* factors counsel against permitting the requested discovery from the Banks. *See Mees*, 793 F.3d at 297–98 (citing *Intel*, 542 U.S. at 264–65).  They do not.

First, no Bank is a party to the contemplated foreign litigation in the Cayman Islands. *See Mangouras*, 980 F.3d at 97. Second, there is no indication that a Cayman Islands court would be unreceptive to federal-court judicial assistance. *Cf. Intel*, 542 U.S. at 264–65. To the contrary: "the Cayman courts are in fact receptive to evidence obtained through U.S. discovery procedures, even if such evidence may not be discoverable under Cayman law." *In re Platinum Partners Value Arbitrage Fund L.P.*, 583 B.R. 803, 816–17 (Bankr. S.D.N.Y. 2018). Because of this, the third factor is satisfied, as the Cayman Island court's receptivity to discovery obtained in the United States demonstrates that Applicants are not seeking "to circumvent" the rules and procedures of the Cayman Islands. *See Mangouras*, 980 F.3d at 98. Fourth, the requested discovery is not unduly intrusive or burdensome. *Id.* The subpoenas that Applicants propose to serve on the Banks are limited to "documents and information in relation to, inter alia, USD transactions and transfers made by the Transferees during the period from January 1, 2009 through June 18, 2018." (Am. Mem. at 7; *see* Sybersma Decl. Exs. C through T.) This is not unduly burdensome or intrusive, as the materials Applicants seek through the subpoenas are routinely produced by banks to satisfy discovery requests. *See, e.g.*, *In re Rodriguez Guillen*, 20-MC-102 (ALC), 2020 WL 3497002, at *3 (S.D.N.Y. June 29, 2020) (noting that a correspondent bank "should be able to search for and produce the records of wire transfers without significant burden"); *In re Berlamont*, No. 14-MC-00190 JSR, 2014 WL 3893953, at *2 (S.D.N.Y. Aug. 4, 2014), *aff'd sub nom. In re Application for an Ord. Pursuant to 28 U.S.C. 1782 to Conduct Discovery for Use in Foreign Proc.*, 773 F.3d 456 (2d Cir. 2014) (finding *Intel* factors weigh in favor of granting the application where "petitioner is seeking a specific, discrete set of documents that are easily identifiable and not unduly burdensome.")

### III. **Conclusion**

Applicants' ex parte request for an order pursuant to 28 U.S.C. § 1782 is GRANTED. Accordingly, it is hereby

ORDERED that Applicants are authorized to serve subpoenas in substantially the form set forth in Exhibits C through T of the Sybersma Declaration upon the Banks.

IT IS FURTHER ORDERED that the Banks shall comply with subpoenas served pursuant to this Order in accordance with the Federal Rules of Civil Procedure, the Local Rules, and my Individual Rules, including with respect to their rights to object to or move to quash any such subpoena.

SO ORDERED.

Dated: March 29, 2023
　　　　New York, New York

　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　Vernon S. Broderick
　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge